UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL SIMANI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-2193 |
| | § | |
| BEECHNUT ACADEMY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court is the defendant's, Beechnut Academy (the "defendant"), motion for summary judgment (Dkt. No. 10). The plaintiff, Cheryl Simani (the "plaintiff"), has filed a response in opposition to the motion (Dkt. No. 11), to which the defendant has filed a reply (Dkt. No. 12). After having carefully considered the motion, response, reply, the record and the applicable law, the Court determines that the defendant's motion for summary judgment should be **GRANTED**.

### II. FACTUAL AND PROCEDURAL BACKGROUND[1]

The plaintiff, a Caucasian Orthodox Jew, worked as a teacher for the defendant from August of 2009, until she was terminated in June of 2014. The plaintiff is a certified teacher and has a Master's Degree in Educational Technology. During her employment with the defendant, the plaintiff was primarily responsible for teaching students who spoke English as a second language. As part of her responsibilities, the plaintiff was required to attend annual training sessions on HISD's policies including grading methods and policies, how to prepare and assess

---

[1] Throughout this section, this Court references exhibits presented in the record, and attachments to the defendant's motion for summary judgment (Dkt. No. 10). Specific references to intervals will not be made.

report cards, student failure prevention, and how to enter grades.[2] Nevertheless, the plaintiff failed and/or refused to enter student grades timely and according to HISD policy.

During the 2013-14 school year, the failure rate in the plaintiff's English class began to increase. The plaintiff started with a 2% failure rate in Cycle 1 that increased to 22% in Cycle 2, and to 50% in Cycle 3. The plaintiff's failure rate increased to 64% by Cycle 5.[3] In January 2014, Beechnut teachers were required to enter student grades into the school's grading system by the close of business on January 22, 2014. However, on January 21, 2014, the plaintiff sent an email to the LCIL and the AC, stating that she was having trouble entering grades into the system. Although the plaintiff was provided with instructions on how to remedy the problem along with support from an IT technician, the plaintiff failed to enter all of her students' grades and missed the deadline.[4] The plaintiff received an extension to January 23; however, the plaintiff failed to comply and refused to produce a hard copy of the grades as instructed. As a result, the plaintiff received a 48-hour notice that a meeting would be held to discuss her failure to meet the grade reporting deadlines. After the meeting, the plaintiff was placed on a performance improvement plan and informed that continued violation of these policies and procedures could result in further disciplinary action including termination.

On February 18, 2014, administration met with the plaintiff to discuss her failure rate. The plaintiff was again counseled concerning HISD's grading policies and how to correct her current grading system, and to follow the HISD grading practices. On April 18, 2014, the parent of a student, "T", visited the school to meet with the plaintiff regarding T's failing grade. The

---

[2] The plaintiff also received training on Gradebook, the software used by the defendant to digitally enter student grades.
[3] The plaintiff points to changes in Texas Law, a large influx in student population, and student behavior as reasons for her not following the grading policy and her increased failure rate.
[4] In plaintiff's response, she claims to have entered all of her students' grades by January 22, 2014, except for two. In a signed document dated January 31, 2014, the plaintiff stated that she had all required grades turned in before she left campus on January 23, 2014.

plaintiff had confused T with another student and did not have T's grades prepared for the meeting. The plaintiff's grading methods were again assessed and determined to not be in accordance with HISD's policy.[5] On May 1, 2014, the plaintiff received another 48 hour notice of meeting to discuss T's grades and the plaintiff's grading practices. The meeting was postponed; however, the plaintiff was placed on administrative leave. In the interim the plaintiff employed an attorney who forwarded the plaintiff's charge of discrimination to the defendant asserting racial and religious discrimination. Later, the plaintiff amended her charge of discrimination to add a claim of retaliation.

## III.  CONTENTIONS OF THE PARTIES

### A.  The Defendant's Contentions

With respect to the plaintiff's Title VII discrimination claim, the defendant argues that the plaintiff cannot establish that she was subjected to an adverse action or was treated less favorably than any similarly situated employee. The defendant alleges that it is entitled to summary judgment because it had legitimate, nondiscriminatory reasons for counseling the plaintiff on her grading practices and in ultimately terminating her employment. In addition, the defendant contends that the plaintiff cannot rebut their proffered legitimate, non-discriminatory reasons for its actions. Thus, the defendant avers that summary judgment is appropriate dismissing all claims in this action.

---

[5] The following issues were noted with the plaintiff's grades assigned to "T."

> (1) none of the student work had any grades or feedback recorded on it, (2) the titles and dates on student work did not match those in the gradebook, (3) not a single paper or group of papers could be definitively identified to represent the grades or assignments listed in the computer, (4) T. had been assigned grades on dates that were prior to his enrollment, (5) grades appeared to be arbitrarily assigned, (6) there was no evidence that T.'s work had been assessed and there were no rubrics associated with grading on a specific scale, and (7) grades appeared to be assigned based on a "complete or incomplete" status rather than a qualitative or quantitative assessment of student work.

### B. The Plaintiff's Contentions

In response, the plaintiff argues that the record demonstrates that the defendant's proffered legitimate, non-discriminatory reason for its actions were a pretext for discrimination. In addition, the plaintiff argues that the record presents evidence that creates a sufficient issue of material fact with respect to her Title VII claims. The plaintiff further alleges that evidence that supports her claim of retaliation requires proof of a but-for character in order to terminate her. Thus, the plaintiff urges the Court to deny the defendant's motion.

## IV. LAW APPLICABLE TO CASE

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951,

954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

### B. Title VII

Title VII forbids an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In employment discrimination cases, such as the one *sub judice*, discrimination under section 1981 may be proven "through direct or circumstantial evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). In a case where a plaintiff produces no direct evidence of discriminatory intent, the Court must evaluate proof of circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Under the *McDonnell Douglas* burden-shifting framework:

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (emphasis, citations and internal quotation marks omitted); *see also Turner*, 476 F.3d at 345 (internal citations omitted). "Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Thus, "a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether the employer's stated reasons was not what actually motivated the employer; and, (2) creates a reasonable inference that race or religion was a determinative factor in the actions of which plaintiff complains." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996).

Using the *McDonnell Douglas* framework to establish race or religious discrimination under section 1981, a plaintiff must demonstrate that she: "(1) belongs to a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of the protected class or, in the case of disparate treatment, that similarly situated employees were treated more favorably." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

### C. Title VII Retaliation

To establish a *prima facie* case of Title VII retaliation, "a plaintiff must show that: (1) [s]he engaged in activity protected by Title VII; (2) [s]he was subjected to an adverse employment action; and, (3) a causal link existed between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.* 320 F.3d 570, 575 (5th Cir. 2003)). "The

burden-shifting structure applicable to Title VII discrimination cases, as set forth in *[McDonnell Douglas],* is applicable to Title VII unlawful retaliation cases." *Haynes v. Pennzoil Co.,* 207 F.3d 296, 299 (5th Cir. 2000).

V.     **ANALYSIS AND DISCUSSION**

On January 25, 2013, the plaintiff submitted a report to the Regional Director regarding ill treatment and experiences she claims to have endured while working for the defendant. Shortly thereafter, she reported that she observed two African American teachers talking and overheard one of them state, "they need to get someone of our own for the position." The plaintiff claims that the statement was directed at her and interpreted it to mean that the defendant should hire an African American or a Christian for the AC position.

In March 2013, the plaintiff applied for the Academic Coordinator ("AC") position at Beechnut. The job requirements for the position included an "[a]dvanced degree in education or related field," "[t]hree to five years of experience working in a school setting, preferably with at-risk youth," and "[o]utstanding interpersonal and communication skills." Lastly, the AC is expected to provide support and training to teachers and instructional staff. The plaintiff was interviewed by the Regional Director and the Executive Director, both African American, for the position. They also interviewed and ultimately selected an African American for the position who had been employed by the defendant for over 10 years, held two Master's Degrees and had worked as Learning Community Instructional Leader ("LCIL") for 5 years, where she gave instructional leadership and support to fellow teachers.

To advance the analysis and discussion of the plaintiff's claim(s), the Court assumes that the plaintiff has stated a *prima facie* case based in race and religion. The defendant asserts that the promoted applicant, when compared to the plaintiff, was more qualified for the position,

more experienced in educational settings, and demonstrated better leadership qualities, none of which were associated with race or religion. An "employer need only articulate a lawful reason [for its actions], regardless of what its persuasiveness may or may not be." *Bodenheimer v. PPG Indus., Inc.,* [63 EPD ¶ 42,661] 5 F.3d 955, 958 (5th Cir. 1993). It is legally permissible for an employer to select job candidates with superior qualifications. *Grimes*, 102 F.3d at 143. Because the plaintiff has not produced evidence that rebuts the defendant's legitimate, nondiscriminatory reason for not promoting the plaintiff, the defendant has met its burden. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996)).

The plaintiff's assertion of pretext also fails as not supported by evidence worthy of credence. *Laxton*, 333 F.3d at 578. Therefore, summary judgment is proper for the defendant on the plaintiff's claims of discrimination based on race and religion.

The Court also grants the defendant's motion concerning the plaintiff's retaliation claim. The plaintiff relies on the email transmission of her charge of discrimination from her attorney as the basis for this claim. However, the stated basis for terminating the plaintiff articulates legitimate, non-retaliatory reasons for her termination. The plaintiff has not presented any evidence that the defendant's reasons for her termination, even in the face of an email from her attorney, were not arbitrary. The plaintiff was counseled and terminated for failure to follow the grading policy. The plaintiff also points to the temporal proximity of the email sent from her counsel to the defendant and her termination. This argument is not evidentiary and fails to disprove the defendant's legitimate nondiscriminatory basis for terminating her. Therefore, the Court holds that, as to the plaintiff's entire suit, summary judgment is appropriate.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, defendant's motion for summary judgment is **GRANTED**.

It is so **ORDERED**.

SIGNED on this 28th day of February, 2018.

Kenneth M. Hoyt
United States District Judge